UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Jennifer Thayer,

    Plaintiff,

    v.                                            Civil Action No. 2:11-CV-117

Commissioner of Social Security,

    Defendant.

## OPINION AND ORDER
(Docs. 6, 9)

Plaintiff Jennifer Thayer brings this action pursuant to 42 U.S.C. § 405(g) of the Social Security Act, requesting review and remand of the decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits. Pending before the Court are Thayer's motion to reverse the Commissioner's decision (Doc. 6), and the Commissioner's motion to affirm the same (Doc. 9). For the reasons stated below, the Court DENIES Thayer's motion, and GRANTS the Commissioner's motion.

## Background

Thayer was thirty-seven years old on her alleged disability onset date of April 1, 2006. She completed school through the tenth grade. Her job history consists of working as a cashier and a cook. At times during the alleged disability period, she lived with her boyfriend and his aging mother. At other times, she lived at a battered women's shelter, a half-way house, or a substance abuse treatment center; or was incarcerated.

The record reflects that Thayer grew up in an alcohol-abusing family, and was molested by a family friend at the age of nine. At age seventeen, she married, and thereafter had two children. She has since divorced. She began using alcohol and marijuana at around the age of ten, and later began abusing painkillers including opioids, which were initially prescribed for back pain. She has undergone at least four substance abuse treatment programs. At age 32, she was incarcerated for selling narcotics to a minor. She has also been charged with assault, larceny, being an accessory to a burglary, and parole/probation violations.

In addition to her drug problems, Thayer also suffers from back pain, depression, and difficulty sleeping. Despite having three back surgeries, steroid injections, and physical therapy, she claims her back pain persists to the point where she is bedridden some days and can walk for only approximately five-to-ten minutes at a time. (AR 39-40.) Her depression symptoms include irritability, low self-esteem, poor concentration, weight gain, fatigue, low libido, feelings of worthlessness, social withdrawal, and suicidal ideation. She also describes having panic attacks, anxiety, and paranoid personality traits. Thayer is obese, smokes approximately one pack of cigarettes each day, and drinks about six cups of coffee and two caffeinated sodas each day.

On January 13, 2009, Thayer protectively filed applications for social security income and disability insurance benefits. In her disability application, she alleged that, starting on April 1, 2006, she has been unable to work due to back problems and depression. (AR 172.) She explained that she is unable to stand or sit for long periods of time; she cannot bend, twist, turn, or stoop; and she is uncomfortable around groups of

people. (*Id.*) Thayer's application was denied initially and upon reconsideration, and she timely requested an administrative hearing. The hearing was conducted on October 14, 2010 by Administrative Law Judge ("ALJ") Dory Sutker. (AR 24-44.) Thayer appeared and testified, and was represented by an attorney. A vocational expert ("VE") also testified at the hearing. On December 13, 2010, the ALJ issued a decision finding that Thayer was not disabled under the Social Security Act at any time from her alleged onset date through the date of the decision. (AR 7-17.) A few months later, the Decision Review Board notified Thayer that it had not completed its review of the claim during the time allowed, rendering the ALJ's decision the final decision of the Commissioner. (AR 1-3.) Having exhausted her administrative remedies, Thayer filed the Complaint in this action on May 5, 2011. (Doc. 1.)

## ALJ Decision

The Commissioner uses a five-step sequential process to evaluate disability claims. *See Butts v. Barnhart*, 388 F.3d 377, 380-81 (2d Cir. 2004). The first step requires the ALJ to determine whether the claimant is presently engaging in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b), 416.920(b). If the claimant is not so engaged, step two requires the ALJ to determine whether the claimant has a "severe impairment." 20 C.F.R. §§ 404.1520(c), 416.920(c). If the ALJ finds that the claimant has a severe impairment, the third step requires the ALJ to make a determination as to whether the claimant's impairment "meets or equals" an impairment listed in 20 C.F.R. Part 404, Subt. P, App. 1 ("the listings"). 20 C.F.R. §§ 404.1520(d), 416.920(d). The claimant is presumptively disabled if the impairment meets or equals a listed impairment.

3

*Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984).

If the claimant is not presumptively disabled, the ALJ is required to determine the claimant's residual functional capacity ("RFC"), meaning "the most [the claimant] can still do despite [his or her mental and physical] limitations," based on all the relevant medical and other evidence in the record. 20 C.F.R. §§ 404.1520(e), 404.1545, 416.920(e), 416.945. The fourth step requires the ALJ to consider whether the claimant's RFC precludes the performance of his or her past relevant work. 20 C.F.R. §§ 404.1520(f), 416.920(f). Finally, at the fifth step, the ALJ determines whether the claimant can do "any other work." 20 C.F.R. §§ 404.1520(g), 416.920(g). The claimant bears the burden of proving his or her case at steps one through four, *Butts*, 388 F.3d at 383; and at step five, there is a "limited burden shift to the Commissioner" to "show that there is work in the national economy that the claimant can do," *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009) (clarifying that the burden shift to the Commissioner at step five is limited, and the Commissioner "need not provide additional evidence of the claimant's [RFC]").

When faced with a claimant who has a drug or alcohol addiction, such as Thayer here, the ALJ is required to consider an extra step in the five-step sequential evaluation. *Salazar v. Barnhart*, 468 F.3d 615, 622 (10th Cir. 2006). The Social Security Act states: "An individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see Porter v. Chater*, 982 F. Supp. 918, 921-22 (W.D.N.Y. 1997). Accordingly, if the ALJ finds that

4

the claimant is disabled, and there is medical evidence of the claimant's drug addiction or alcoholism, the ALJ "must determine whether [that] drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). The "key factor" in this determination is "whether [the Commissioner] would still find [the claimant] disabled if [he or she] stopped using drugs or alcohol." 20 C.F.R. § 404.1535(b)(1); *see Frankhauser v. Barnhart*, 403 F. Supp. 2d 261, 272 (W.D.N.Y. 2005). Given that the claimant is the party best suited to demonstrate whether he or she would still be disabled in the absence of drug or alcohol addiction, "[w]hen the record reflects drug or alcohol abuse, the claimant bears the burden of proving that substance abuse is not a contributing factor material to the disability determination." *Eltayyeb v. Barnhart*, No. 02 Civ. 925 (MBM), 2003 WL 22888801, at *4 (S.D.N.Y. Dec. 8, 2003) (citations omitted); *see Frankhauser*, 403 F. Supp. 2d at 273.

Employing this sequential analysis, ALJ Sutker first determined that, although Thayer had worked after the alleged onset date of April 1, 2006, that work was below substantial gainful activity levels, and thus she had not engaged in substantial gainful activity during the alleged disability period. (AR 10.) At step two, the ALJ found that Thayer had the following severe impairments: "substance abuse, a lumbar spine disc herniation, a pain disorder, and obesity." (*Id.*) At step three, the ALJ found that Thayer's impairments, including her substance use disorders, met Listing 12.09, which is the listing for substance addiction disorders. (AR 10.) The ALJ explained that Thayer had a depressive disorder with anxiety and a pain disorder; and that she had moderate restriction in activities of daily living, marked difficulties with social functioning, and

5

marked difficulties with concentration, persistence, or pace. (*Id.*) The ALJ further explained that Thayer had experienced one to two episodes of decompensation, and had engaged in several drug-related detoxification programs. (*Id.*)

Next, the ALJ determined that, if Thayer stopped the substance use, her depression would cause "no more than minimal/mild limitations," but she would continue to have the severe impairments of lumbar spine disc herniation, a pain disorder, and obesity. (AR 12.) The ALJ further determined that, if Thayer stopped the substance use, she would not have an impairment or combination of impairments that met or medically equaled a listed impairment. (AR 12-13.) The ALJ next found that, if Thayer stopped the substance use, she would have the RFC to perform the full range of sedentary work, as defined in 20 C.F.R. § 404.1567(a). (AR 13-15.) Given this RFC, the ALJ found that, if Thayer stopped the substance use, she would be unable to perform her past relevant work as a cashier and a cook; nonetheless, there would be a significant number of jobs in the national economy that Thayer could perform. (AR 15-16.) The ALJ concluded that, because Thayer would not be disabled if she stopped the substance use, her substance use disorders were a "contributing factor material to the determination of disability," and thus Thayer had not been disabled within the meaning of the Social Security Act from the alleged onset date of April 1, 2006 through the date of the decision. (AR 16.)

## Standard of Review

The Social Security Act defines the term "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be

6

expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A person will be found to be disabled only if it is determined that his "impairments are of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

In reviewing a Commissioner's disability decision, the court limits its inquiry to a "review [of] the administrative record *de novo* to determine whether there is substantial evidence supporting the . . . decision and whether the Commissioner applied the correct legal standard." *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir. 2002) (citing *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000)); *see* 42 U.S.C. § 405(g). A court's factual review of the Commissioner's decision is limited to determining whether "substantial evidence" exists in the record to support such decision. 42 U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991); *see Alston v. Sullivan*, 904 F.2d 122, 126 (2d Cir. 1990) ("Where there is substantial evidence to support either position, the determination is one to be made by the factfinder [sic]."). "Substantial evidence" is more than a mere scintilla; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Poupore*, 566 F.3d at 305. In its deliberations, the court should consider that the Social Security Act is "a remedial statute to be broadly construed and liberally applied." *Dousewicz v. Harris*, 646 F.2d 771, 773 (2d Cir. 1981).

## Analysis

**I.     "Materiality" of Thayer's Substance Abuse Disorder**

Contrary to Thayer's claim, the ALJ's analysis of Thayer's substance abuse disorder was proper. As discussed above, the regulations require that, if – as here – the ALJ determines that the claimant is disabled and has medical evidence of the claimant's drug addiction; the ALJ must determine whether that drug addiction is a "contributing factor material to the determination of disability." 20 C.F.R. § 404.1535(a). In making this determination, the ALJ is required to conduct a two-part inquiry: first, deciding whether the claimant is disabled by all her impairments including her substance abuse disorder; and second, determining whether the claimant would still be disabled if he or she stopped using drugs. 20 C.F.R. § 404.1535(a), (b); *Frankhauser*, 403 F. Supp. 2d at 272. As described above, the ALJ properly conducted this two-part inquiry. The ALJ first determined that Thayer was disabled by all her impairments, including her substance abuse disorder, which met Listing 12.09. (AR 10.) And second, the ALJ determined that Thayer would not remain disabled if she stopped her substance use. (AR 16.)

Substantial evidence supports the ALJ's determination that Thayer would be able to do sedentary work if she stopped her substance use. For example, in November 2007, during a period of abstinence, Thayer's treating physician, Dr. John King, noted that Thayer was "working 20 hours a week, though applying for Disability, as her back has significant function[ality]." (AR 669.) The Doctor further noted that, in addition to working part-time, Thayer was attending a sobriety program three days each week for three hours a day. (*Id.*) Moreover, and as the ALJ pointed out, in September 2008,

8

Thayer reported to Dr. King that her pain was "fairly well controlled," despite experiencing muscle spasms in her legs mostly at night. (AR 348.) In November 2009, Thayer reported to Dr. King that, although she was having increasing pain and numbness in her left leg, she was doing "fairly well in terms of daily functional activity," including completing chores and showering. (AR 725.) The Doctor noted that Thayer appeared "quite well," was "moving fairly easily in the room," and had "good strength." (*Id.*) In disability reports, Thayer reported that, although her back hurt all the time, when she took her medications, she was able to prepare light meals, do dishes, fold laundry, handle money, play cards and dice, watch television, sew, and walk one-quarter of a mile. (AR 182-85, 198.) In February 2010, as noted by the ALJ, Thayer reported to Dr. King that her back pain was "stable" and her depression and anxiety were "not limiting." (AR 720.) Treatment notes from July 2010 reveal that Thayer was fairly active, despite her pain and substance abuse issues, and was providing nursing-type care for her friend's aging mother "24 hours a day" for "the last year," caring for herself, and "actively engaging in addictive behavior." (AR 647.)

With respect to social functioning, as the ALJ explained, Thayer's own treating physician, Dr. King, opined in September 2010 that she had no limitation in her ability to interact appropriately with others. (AR 703.) The ALJ also noted that another of Thayer's treating physicians, Dr. Andrew Horrigan, opined in July 2010 that Thayer had "likely" "developed a pain syndrome from heavy opioid use, and once opioids are detoxified from her system, her pain levels may diminish." (AR 651.) In accord, and as noted by the ALJ, treating physician Dr. Brian Erickson stated in November 2007 that

Thayer "[wa]s aware that her pain perceptions get worse when she is experiencing stress." (AR 669.) The ALJ also accurately stated that each of Thayer's past episodes of decompensation was induced by drug use, and thus that, absent such use, these episodes "would likely cease." (AR 13.)

Thayer references records from the Howard Center which indicate that, during an approximately fifty-day period of sobriety, Thayer "still fe[lt] serious back pain and depressed mood." (Doc. 6 at 5 (citing AR 677, 679).) But these same records diagnose Thayer with opioid dependence, cocaine abuse, amphetamine abuse, and cannabis abuse; and reveal that Thayer was "still participating in high risk/criminal behaviors" and "addict/criminal behavior," and more specifically, that she still suffered from "[o]pioid dependence as evidenced by a great deal of time . . . spent in activities necessary to obtain the substance or recover from it[]s effects." (AR 677, 678; *see* AR 712.) These records also reveal that, although Thayer suffered from extreme poverty, inadequate housing, and unemployment; she "presented as mostly positive and engaged," was "generally functioning pretty well," and "ha[d] some meaningful interpersonal relationships." (AR 678, 679.)

In light of this evidence, much of which the ALJ referenced in her decision, the Court finds that substantial evidence supports the ALJ's determination that Thayer's substance abuse was material to her disability determination.

## II.   Thayer's Back Impairment and Listing 1.04

Thayer next contends that the ALJ erred in determining that her impairments did not meet Listing 1.04, the listing for disorders of the spine; and more specifically, that the

ALJ should have considered the opinions of treating physician Dr. King in making this determination. The ALJ stated as follows with respect to Listing 1.04: "I find that [Thayer] fails to meet the criteria [for Listing 1.04] because she does not display evidence of nerve root compression, spinal arachnoiditis, or lumbar spinal stenosis that results in an inability to ambulate effectively." (AR 13.)

For a claimant to qualify for benefits by showing that his or her impairment meets a listing, the impairment "must meet *all* of the specified medical criteria" for the particular listing. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). For a claimant to qualify for benefits by showing that his or her unlisted impairment or combination of impairments is "equivalent" to a listed impairment, the claimant "must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." *Id.* at 531. The Social Security Administration has explained that a determination regarding whether a claimant's impairment or combination of impairments is medically the equivalent of a listed impairment "must be based on medical evidence demonstrated by medically accepted clinical and laboratory diagnostic techniques, including consideration of a medical judgment about medical equivalence furnished by one or more physicians designated by the Secretary." SSR 86-8, 1986 WL 68636, at *4 (1986), *superseded on other grounds* by SSR 91-7c, 1991 WL 231791 (Aug. 1, 1991). For a claimant to meet or equal the severity of Listing 1.04, the claimant must suffer from:

> *Disorders of the spine* (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), *resulting in compromise of a nerve root* (including the cauda equina) *or the spinal cord*. With:

11

> A. *Evidence of nerve root compression* characterized by neuroanatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) *accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)* . . . .

20 C.F.R. Part 404, Subt. P, App. 1, Listing 1.04 (emphases added).

Thayer references only four pages from the 909-page record to support her claim that her impairments met or medically equaled Listing 1.04. (*See* Doc. 6 at 6-7.) First, Thayer refers to Dr. King's statement in his September 2010 opinion that a 2002 MRI revealed "concentric disc protrusion [at] L5-S1 with nerve root compression." (AR 703; *see* AR 467.) Next, Thayer refers to 1991 and 1993 "Operative Reports" which document two separate surgeries intended to "decompress[] . . . S1 nerve root." (AR 470, 481.) However, the MRI and each Operative Report pre-dates the alleged disability onset date by at least several years.

Moreover, in order to meet Listing 1.04, the claimant must demonstrate "functional loss," meaning "the inability to ambulate effectively on a sustained basis." 20 C.F.R. Part 404, Subt. P, App. 1, § 1.00(B)(2)(a). "Inability to ambulate effectively" is defined as meaning "an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning . . . to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities." *Id.* at § 1.00(B)(2)(b)(1). Here, the record – including Thayer's own self-reporting – reflects that Thayer was able to effectively ambulate without assistive devices

12

during the insured period. (*See, e.g.,* AR 154 (able to go out alone and able to shop in stores for food and personal needs items once a month), 157 (no assistive devices required to ambulate), 355 ("normal heel-and-toe walk"), 548 ("fairly active doing her normal activities," "back shows fairly good range of motion with quick motion to get up onto the exam table"), 706 (cane not required to ambulate), 713 ("walks without difficulty"), 725 ("doing fairly well in terms of daily functional activity," "moving fairly easily in the room," "normal heel and toe walk").)

Thus, the ALJ correctly held that Thayer did not have an impairment or combination of impairments that met or medically equaled Listing 1.04 during the insured period.

### III. Treating Physician's Opinion

Finally, Thayer argues that the ALJ should have afforded "controlling weight" to the opinion of her treating physician, Dr. King, and that Dr. King's opinion should have been incorporated into the ALJ's RFC determination. (Doc. 6 at 8-9.) In September 2010, Dr. King opined in a "Medical Source Statement of Ability to Do Work-Related Activities (Physical)" that Thayer could not perform even sedentary work, and could never walk a block at a reasonable pace or travel without a companion for assistance. (AR 705-09.) He further opined that Thayer's physical impairments would cause her to be absent from work for more than four days each month. (AR 709.) The ALJ afforded "little weight" to this opinion, stating that it was "inconsistent with the medical record, when considered as a whole, as well as the objective medical findings." (AR 15.)

Under the "treating physician rule," a treating physician's opinion on the nature and severity of a claimant's condition is entitled to "controlling weight" if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record."  20 C.F.R. § 404.1527(d)(2); *see Schisler v. Sullivan*, 3 F.3d 563, 567-69 (2d Cir. 1993).  Conversely, a treating physician's opinion is *not* entitled to controlling weight where "it is not consistent with other substantial evidence in the record, such as the opinions of other medical experts."  *Stanton v. Astrue*, 370 F. App'x 231, 234 (2d Cir. 2010) ("Because Dr. Lasda's opinion was unsupported by objective clinical evidence and contradicted by his own records, the examination report of Dr. Ganesh, the report of a state agency disability analyst, and [the plaintiff's] own account of her range of activities, the ALJ did not err in declining to accord it controlling weight.") (citing *Halloran v. Barnhart*, 362 F.2d 28, 32 (2d Cir. 2004)).  Factors to be considered in affording weight to a treating physician's opinion include the nature and length of the treatment relationship, the physician's area of specialization, whether the opinion is consistent with the record as a whole, and whether the opinion is supported by medical or other evidence.  20 C.F.R. § 404.1527(d).

Dr. King's opinion that Thayer was unable to do even sedentary work due to her physical impairments is not supported by citation to medically acceptable clinical and laboratory diagnostic techniques.  The only comment provided by Dr. King as "the particular medical or clinical findings" supporting his opinion is: "[e]xacerbates low back pain."  (AR 708.)  Oddly, in a "Medical Source Statement of Ability to Do Work-Related Activities (*Mental*)," Dr. King provided clinical findings to support his opinion that

14

Thayer is unable to work as a result of her *physical* impairments, including a 2002 MRI and a 2003 x-ray. (AR 703 (emphases added).) But, as discussed above, these tests significantly pre-date the alleged onset date. Similarly, the notes from Drs. Paul Penar and John Fogarty, cited by Thayer as medical evidence supporting Dr. King's opinions, also pre-date the alleged onset date. (AR 237-38.) The notes from Dr. Graham, also cited by Thayer in support of Dr. King's opinions, actually support the ALJ's RFC determination because they state that Thayer's pain was only "intermittent" and that she had a "normal heel-and-toe walk," which would allow for sedentary work. (AR 355.)

      More importantly, Dr. King's opinions are inconsistent with other substantial evidence in the record, including his own treatment notes and Thayer's self-reporting. Aas noted above, in September 2008, Thayer reported to Dr. King that her pain was "fairly well controlled," despite experiencing muscle spasms in her legs mostly at night. (AR 348.) A few months later, in December 2008, Dr. King noted that Thayer was "mov[ing] well[,] getting up on the exam table" and had "normal heel-and-toe walk." (AR 344.) In May 2009, Dr. King recorded that Thayer was "fairly active doing her normal activities," and that Thayer's "back shows fairly good range of motion with quick motion to get up onto the exam table." (AR 548.) And in November 2009, Dr. King stated that, although Thayer was having increased numbness and pain in her left leg, she was "doing fairly well in terms of daily functional activity, getting her chores done, being able to wash dishes and take a shower, for example." (AR 725.) The Doctor again noted that Thayer was "moving fairly easily in the room" and had "normal heel and toe walk." (*Id.*) These contemporaneous recordings in Dr. King's treatment notes do not support the

15

opinion he provided in his physical Medical Source Statement that, for example, Thayer could never climb stairs, stoop, kneel, crouch, reach overhead, push/pull, or operate foot controls; and was unable to travel without a companion for assistance or walk a block at a reasonable pace on rough or uneven ground.  (AR 707-09.)  Nor does Thayer's own self-reporting support such limitations.  In fact, Thayer stated in a Function Report that she was able to "go out alone" (AR 154), in direct contrast to Dr. King's statement that Thayer was unable to "travel without a companion for assistance" (AR 709).

The record as a whole supports the ALJ's finding that Thayer was able to perform a wide range of activities when she was not abusing substances, in contravention to Dr. King's opinion.  Therefore, the ALJ did not err in affording little weight to that opinion.

## **Conclusion**

For these reasons, the Court DENIES Thayer's motion (Doc. 6), GRANTS the Commissioner's motion (Doc. 9), and AFFIRMS the decision of the Commissioner.

Dated at Burlington, in the District of Vermont, this 6th day of March, 2012.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge